**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

**CASE NO:**

LISA HARRIS,
individually and on behalf of all
others similarly situated,

Plaintiff,

CLASS ACTION

JURY TRIAL DEMANDED

v.

NISSAN MARIETTA, LLC,

Defendant.
_________________________________/

## CLASS ACTION COMPLAINT

Plaintiff Lisa Harris brings this class action against Defendant Nissan Marietta, LLC, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. (the "TCPA").

2. To promote its car business, Defendant engages in unsolicited text messaging and continues to text message consumers and make phone calls to them after they have opted out of Defendant's solicitations.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation,

and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA").

5. The Court has general personal jurisdiction over Defendant and venue is proper in this District because Defendant is incorporated and headquartered in this District.

## PARTIES

6. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Georgia.

7. Defendant is a Georgia company headquartered in Morrow, GA.

## FACTS

8. On or about September 18, 2025, Plaintiff responded to Defendant's text message from its 877-959-6926 number, sent to Plaintiff's cellular telephone number ending in 2807 ("2807 Number"), with a "stop" instruction as depicted below:




9. Defendant immediately responded that Plaintiff's stop request had been received.




10. Notwithstanding, on December 12, 2024 and January 13, 2025, Defendant sent the following text messages to Plaintiff on October 3, 2025, October 31, 2025 and November 25, 2025:










11. Next, on January 15, 2026 and January 16, 2026, Defendant called Plaintiff at least three separate times:









12. The call on January 15, 2026 was by someone claiming to be from Defendant's business and asking her to come and test drive a vehicle. Plaintiff hung up the phone.

13. The call on January 16, 2026 at 9:00 a.m. was from a woman who said she was from Defendant, to which Plaintiff hung up the phone.

14. The call on January 16, 2026 at 9:01 a.m. was from the same woman who said Defendant was having a sale.

15. On January 24, 2026, Defendant again called Plaintiff and asked Plaintiff to come and test drive a Nissan Kick.




16. Plaintiff reasonably revoked any consent Defendant may claim to have to receive text messages or calls from Defendant. Notwithstanding, Defendant continued to send calls and text messages for the purpose of encouraging Plaintiff to purchase goods or services from Defendant.

17. Plaintiff never opted back in to receive text messages from Defendant after her first "stop" request on September 18, 2025.

18. Given Defendant's use of an automated text messaging platform, as reflected by the auto-reply opt-out confirmations Plaintiff received, depicted above, Defendant had the ability to immediately opt Plaintiff out of further communications but chose not to do so. Accordingly, it was unreasonable for Defendant to continue texting Plaintiff given its ability to immediately opt Plaintiff out and its representation that Plaintiff had been opted out of further communications.

19. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to advertise, promote, and/or market Defendant's services, i.e., selling Plaintiff and the Class Members vehicle and related goods/services.

20. Defendant's text messages and calls were an attempt to solicit Plaintiff's and Class Members' business and patronage.

21. Specifically, the purpose of Defendant's calls and text messages was to encourage Plaintiff to schedule a visit with Defendant and/or to purchase a vehicle or other goods and services.

22. All of Defendant's text messages were a pretext for the sale of goods or services and, on information and belief, Defendant sent the texts to encourage Plaintiff and the Class Members to purchase Defendant's services.

23. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

24. Defendant sent at least two solicitations after Plaintiff's initial opt-out request.

25. Plaintiff is the regular user of the telephone number that received the above telephonic calls.

26. Plaintiff utilizes the cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

27. Plaintiff's cellular telephone number has been listed on the National Do Not Call Registry since November 26, 2025.

28. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services

and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

29. Defendant's refusal to honor Plaintiff's opt-out instructions for over at least four (4) months, demonstrate that Defendant has not instituted procedures that meet the minimum requirements of section 64.1200(d),

30. Defendant's lack of procedures has resulted in Defendant failing to (1) honor opt-out requests within a reasonable period of time that does not exceed 30 days; (3) train its personnel engaged in telemarketing in the use and maintenance of a do-not-call list; (4) place consumers who text Defendant with "stop" instructions promptly on an internal do-not-call list; and (3) maintain a record of consumers' do-not-call "stop" text requests.

31. Defendant did not maintain procedures for handling and processing text message opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to send text messages for over five (5) months.

32. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests caused Plaintiff and the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

33. Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

34. Defendant's unwanted and unsolicited text messages caused Plaintiff and the Class Members actual harm, including invasion of privacy, intrusion upon seclusion, and intrusion into the peace and quiet in a realm that is private and personal to Plaintiff and the Class members. *See Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *see also Muccio v. Glob. Motivation, Inc.*, No. 23-10081, 2023 U.S. App. LEXIS 22436 (11th Cir. Aug. 25, 2023) (same for FTSA claim arising from unwanted text messages).

## CLASS ALLEGATIONS

### PROPOSED CLASS

35. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

36. Plaintiff brings this case on behalf of the Classes defined as follows:

> **INTERNAL DO NOT CALL CLASS: All persons within the United States who, within the four years prior to the filing of this action, (1) received more than one text message or voice call within any 12-month period, (2) regarding Defendant's goods and/or services, (3) to said person's residential cellular telephone number, (4) after making a request to Defendant to not receive future text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**
>
> **DNC Class: All persons in the United States who, within the four years prior to the filing of this action through the**

> **date of class certification, (1) were sent more than one text message or phone call within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (3) regarding Defendant's goods and/or services; (4) to said person's residential cellular telephone number; (5) after making a request to Defendant to not receive further text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**

37. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

38. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

39. Upon information and belief, Defendant has placed automated calls and text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

40. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

41. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

a) Whether Defendant violated 47 C.F.R. § 64.1200(d);

b) Whether Defendant's conduct was knowing and willful;

c) Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;

d) Whether Defendant keeps records of text recipients who revoked consent to receive texts.

e) Whether Defendant has any written policies for maintaining an internal do not call list.

f) Whether Defendant violated the privacy rights of Plaintiff and members of the class;

g) Whether Defendant is liable for damages, and the amount of such damages; and

h) Whether Defendant should be enjoined from such conduct in the future.

42. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

43. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

44. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

45. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

46. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**<u>VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)</u>**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

47. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing

> purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

49. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity that, like Defendant, sends telemarketing text messages to wireless telephone numbers.

50. Plaintiff and the Class Members are residential telephone subscribers who received more than one telemarketing text message or voice call from Defendant, who has failed to implement adequate procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests within a reasonable period of time that does not exceed 30 days, and its lack of a written policy for maintaining an internal do-not-call list.

51. Plaintiff and the Class members made requests to Defendant not to receive texts or calls from Defendant.

52. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

53. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

54. Defendant failed to honor Plaintiff's and the Class members' opt-out requests within a reasonable period time.

55. In violation of section 64.1200(d)(1), Defendant does not have written policy for maintaining a do-not-call list.

56. In violation of section 64.1200(d)(2), Defendant does not train its personnel engaged in telemarketing on the existence and use of a do-not-call-list with respect to inbound "stop" text messages like those sent by Plaintiff and the Class members. Defendant's lack of adequate training resulted in Plaintiff and the Class members receiving text messages after they texted Defendant with "stop" or similar opt-out instructions.

57. In violation of section 64.1200(d)(3), Defendant failed to record Plaintiff's and the Class Members' opt-out requests on a do-not-call list, and failed to honor Plaintiff's and the Class Members' do-not-call requests within a reasonable time.

58. In violation of section 64.1200(d)(6), Defendant does not maintain a do-not-call list consisting of consumers' inbound "stop" text message requests to not receive text messages, and therefore does not honor those requests within a reasonable period of time.

59. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

**COUNT II**
**Violations of 47 U.S.C. § 227(c) and 64.1200(c)**
**(On Behalf of Plaintiff and the DNC Class)**

60. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

61. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the

national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

62. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

63. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

64. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

65. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message and/or voice call in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

66. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should,

pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all telephonic sales calls made in violation of the TCPA, and to otherwise protect the interests of the Class;

e) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Dated: January 26, 2026

**SHAMIS & GENTILE P.A.**

*/s/ Andrew Shamis*
Andrew J. Shamis, Esq.
Georgia Bar No. 494196
ashamis@shamisgentile.com
26 Grand Georgian Ct.
Cantersville, GA 30121
Telephone: 305-479-2299
***Counsel for Plaintiff and the Classes***